# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DAVID BUTLER and KATHY BUTLER, his wife, ) | |
| ) | |
| Petitioners, ) | No. 22-963 |
| ) | |
| v.  ) | **JURY TRIAL** |
| ) | **DEMANDED** |
| A.W. CHESTERTON COMPANY, ) | |
|    ALLIED PAINT & WALLPAPER COMPANY, INC., ) | |
| BRAND INSULATIONS, INC., ) | |
| BWDAC INC., f/k/a BWD AUTOMOTIVE ) | |
|  CORPORATION, ) | |
| CARLISLE INDUSTRIAL BRAKE & FRICTION, INC., ) | |
| CASE NEW HOLLAND INDUSTRIAL, INC., ) | |
| CATERPILLAR INC., ) | |
| CBS CORPORATION, a Delaware corporation f/k/a ) | |
|  VIACOM INC. successor-by-merger to CBS ) | |
|  CORPORATION, a Pennsylvania corporation f/k/a ) | |
|  WESTINGHOUSE ELECTRIC CORPORATION, ) | |
| CLEAVER-BROOKS, INC., ) | |
| CNH INDUSTRIAL AMERICA LLC, ) | |
| CRANE CO., ) | |
| CROWN CORK & SEAL COMPANY, INC., ) | |
| CUMMINS, INC., ) | |
| DAIMLER TRUCKS NORTH AMERICA LLC, ) | |
| DEERE & COMPANY, ) | |
| EATON CORPORATION, ) | |
| FORD MOTOR COMPANY, ) | |
| FOSTER WHEELER ENERGY CORPORATION, ) | |
| GENERAL ELECTRIC COMPANY, ) | |
| GENERAL GASKET CORPORATION, ) | |
| HERCULES, LLC, ) | |
| INDUSTRIAL HOLDINGS CORPORATION f/k/a THE ) | |
|  CARBORUNDUM COMPANY, ) | |
| J.P. BUSHNELL PACKING, ) | |
| JOHN CRANE, INC., ) | |
| KELLY MOORE PAINT COMPANY INC., ) | |
| MACK TRUCKS INC., ) | |
| MCKESSON CORPORATION, ) | |
| MISSOURI DRYWALL SUPPLY INC., ) | |
| MORSE TEC LLC, f/k/a BORGWARNER MORSE TEC ) | |
|  LLC, and Successor-by-Merger to BORG-WARNER ) | |

|  |  |
|---|---|
|    CORPORATION, | ) |
| NAVISTAR INC., | ) |
| OSHKOSH CORPORATION, | ) |
| PACCAR INC., | ) |
| PNEUMO ABEX LLC, successor-in-interest to ABEX | ) |
|   CORPORATION, f/k/a PNEUMO ABEX | ) |
|   CORPORATION, | ) |
| RILEY STOKER CORPORATION, | ) |
| UNION CARBIDE CORPORATION, | ) |
| VOLVO GROUP NORTH AMERICA INC., | ) |
| WESTERN AUTO SUPPLY COMPANY, | ) |
|  | ) |
|       Defendants. | ) |

## NOTICE OF REMOVAL

Defendant Oshkosh Corporation hereby removes this action to the United States District Court for the Eastern District of Missouri, Eastern Division, based upon federal-officer jurisdiction pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446.  In support of removal, Defendant Oshkosh Corporation provides the following short and plain statement:

1.      On February 8, 2022, Plaintiffs filed their Petition in the Twenty-Second Judicial Circuit Court in St. Louis, Missouri.  *See* Plaintiffs' Petition, attached hereto as Exhibit 1 and incorporated by reference herein.  On June 16, 2022, Plaintiffs filed their First Amended Petition alleging, *inter alia*, that Plaintiff David Butler was exposed to asbestos emanating from certain of Defendants' products he allegedly encountered throughout his career history as a laborer, roofer, mechanic, and business owner/operator at various locations throughout the United States from 1986 to 1991 as well as through non-occupational projects, including, but not limited to, home and automotive repairs, maintenance and remodeling from 1978 to 1991.  *See* Plaintiffs' First Amended Petition at ¶¶ 2, 8-9, attached hereto as Exhibit 2 and incorporated by reference herein.

2. On August 19, 2022, a copy of Petitioner's Answers to Interrogatories were served upon Defendants, wherein Plaintiff David Butler alleged he was exposed to asbestos while working as a mechanic in the U.S. Army from 1986 to 1991. *See* Petitioner's Answers to Interrogatories at Employment History Product Exposure Worksheet, attached hereto as Exhibit 3 and incorporated by reference herein.

3. With respect to Defendant Oshkosh Corporation, Plaintiff David Butler alleged he was exposed to asbestos while working on or around 10-ton trucks and tank haulers manufactured by Oshkosh Corporation. *Id*.

4. On August 25, 2022 and August 26, 2022, during deposition, Plaintiff David Butler testified that he was exposed to asbestos when he worked on or around HEMTTs, manufactured by Defendant Oshkosh Corporation, and their component parts while working for the Army from 1986 to 1991 at locations such as Ft. Leonard Wood, Missouri, Ft. Lewis, Washington, Ft. Irwin, California, Ft. Clayton, Panama, Ft. Riley, Kansas, and Iraq. *See* Deposition Transcript of David Butler, Volume I, at 30:25-34:10; 46:15-49:25; 54:10-58:18; 88:3-108:12; and 127:22-135:11, attached hereto as Exhibit 4 and incorporated by reference herein; *see also* Deposition Transcript of David Butler, Volume II, at 37:4-92:9, attached hereto as Exhibit 5 and incorporated by reference herein.

5. Plaintiffs' allegations that Plaintiff David Butler was exposed to asbestos while working with or around Defendant Oshkosh Corporation vehicles and/or equipment as an employee of the Army give rise to Defendant Oshkosh Corporation's federal defense – often referred to as the government-contractor defense. In short, any Oshkosh Corporation product that Plaintiffs allege Plaintiff David Butler was exposed to in the Army was manufactured for and supplied to the Army (along with any product literature, labeling, or warnings that

3

accompanied those products) in strict accordance with Army specifications and requirements. Federal officers exercised their discretion regarding whether (i) asbestos was used in the product, and (ii) whether a warning would accompany the product (and if so, what it would say). Without approval from a federal officer, Oshkosh Corporation's products could not have been used by the Army.

6. This Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(3) and Fed. R. Civ. P. 6(a)(1)(C) because Defendant Oshkosh Corporation is filing it within 30 days of service of Plaintiffs' Answers to Interrogatories wherein Plaintiff David Butler stated he encountered vehicles and/or equipment manufactured by Defendant Oshkosh Corporation in an Army work setting. *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 973 (8th Cir. 2011).

7. Removal is proper under 28 U.S.C. § 1442(a)(1), where the removing defendant establishes that: (1) the defendant is a person under the statute; (2) the defendant was acting under the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) there is a causal nexus between the plaintiffs' claims and the defendant's actions under federal direction; and (4) the defendant has raised a colorable defense based on federal law. *Jacks v. Meridian res. Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012). Notably, the federal officer removal statute is broader than other removal statutes, and is not narrow or limited. *Willingham v. Morgan*, 395 U.S. 402, 405-406 (1969). "In fact, one of the most important reasons for removal is to have the validity of the defense…tried in a federal court. The [defendant] need not win his case before he can have it removed. *Id*. at 407. Defendant Oshkosh Corporation meets all four elements and is, therefore, entitled to remove this action.

8. Defendant Oshkosh Corporation has met the first element because corporations qualify as a "person" under the statute because "the 'person' contemplated by the federal officer removal statute includes corporations." *Jacks v. Meridian Res. Co.*, 701 F.3d at 1230 n.3.

9. With respect to the second element for federal-officer removal, the assistance that private contractors provide federal officers must go beyond simple compliance with the law and help officers fulfill other basic governmental tasks. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007). In other words, the private entity must help federal officers fulfill "basic governmental tasks" such as by providing the Government with a product that it used to help conduct war. *Watson v. Philip Morris Cos.*, 551 U.S. at 153-54; *see also*, *Graves v. 3M Co.*, 17 F.4th 764, 769 (8th Cir. 2021); *Jacks v. Meridian res. Co.*, 701 F.3d at 1231.

10. Here, Defendant Oshkosh Corporation was acting under the direction of the Army in the design, and sale of its HEMTTs to provide heavy transport capabilities for supply and re-supply combat vehicles and weapons for and to the United States Army. S*ee* Affidavit of Laura Andre at ¶¶ 4-6, attached hereto as Exhibit 6 and incorporated by reference herein.[1] Defendant Oshkosh Corporation's HEMTTs were designed and manufactured in strict accordance with precise contracts and specifications approved by the Army. For example, as part of its contract with the Army, Defendant Oshkosh Corporation was required to provide the Army with documentation via Contract Data Requirements List ("CDRL"), demonstrating compliance with purchase descriptions, performance specifications, and a Statement of Work ("SOW"), which included a system safety program and hazardous materials management program at the direction of and for review and approval by the Army. *Id.* at ¶¶ 6-8.

---

[1] Defendant Oshkosh Corporation provides this affidavit as an example of the evidence it may present on these issues. Defendant Oshkosh Corporation may choose to present additional information regarding these issues once the case proceeds.

11. The Army also issued specifications for vehicles and/or equipment manufactured by Defendant Oshkosh Corporation, including HEMTTs (and any of its component parts, such as engine gaskets and brakes), which required the use of hazardous materials, including asbestos. *Id*. at ¶¶ 8-10. Compliance with these specifications was directly monitored by the Army and subject to extensive testing and inspection by the Army as a prerequisite to approval, acceptance and use. *Id*. at ¶ 11. For example, the Army conducted first production, verification, logistic demonstration, validation and verification events, and physical configuration audits on all equipment and vehicles manufactured by Defendant Oshkosh Corporation, including HEMTTs. *Id*. at ¶ 12. Moreover, every vehicle manufactured by Defendant Oshkosh Corporation, including HEMTTs, is inspected and approved by the U.S. Government's Quality Assurance team before it can be sold and/or used by the Army. *Id*. at ¶ 13. Thus, given the Army's direct and detailed control over the design and manufacture of Defendant Oshkosh Corporation HEMTTs, Defendant Oshkosh Corporation has met this element.

12. In light of the specific direction and strict control of the Army over the design and manufacture of Oshkosh Corporation products detailed above, there exists a strong causal nexus between Plaintiffs' claims and Defendant Oshkosh Corporation's actions, thus meeting the third element. Crediting Defendant Oshkosh Corporation's theory of the case, the evidence demonstrates it included asbestos in certain equipment and vehicles, such as HEMTTs and its component parts, because it conformed to the specifications dictated by the Army, which Defendant Oshkosh Corporation had no choice but to follow and which mandated the use of asbestos. Here, Plaintiffs' claims against Defendant Oshkosh Corporation depend solely on the actions taken by Defendant Oshkosh Corporation in accordance and compliance with directions from the Army. Thus, Defendant Oshkosh Corporation has cleared the low hurdle to show a

6

causal connection between its decision to include asbestos on and in its vehicles and equipment, including HEMTTs and its component parts, and the Army's directive to do so. *Jefferson Cty. V. Acker*, 527 U.S. 423 432 (1999); *see also*, *Jacks v. Meridian Res. Co.*, 701 F.3d at 1230 n.3.

      13.      With respect to the fourth element, Defendant Oshkosh Corporation's government-contractor defense is a colorable federal defense to Plaintiffs' claims. As set forth in the product-liability/design defect context by the Supreme Court of the United States in *Boyle v. United Technologies Corp.*, 487 U.S. 500. 512 (1988), the government-contractor defense applies when: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United State about the dangers in the use of the equipment that were known to the supplier but not to the United States. Defendant Oshkosh Corporation has a colorable federal defense because the Army provided Defendant Oshkosh Corporation with precise specifications regarding its products and Defendant Oshkosh Corporation delivered products that conformed to those specifications. *See* Exhibit 6 at ¶¶ 5-13. The Army was ultimately solely responsible for directing and/or approving the use of any required hazardous materials, including asbestos, contained in equipment and vehicles manufactured by Defendant Oshkosh Corporation, including HEMTTs and its component parts. *Id*. at ¶ 9. The Army specifications governed not only the design and construction of Defendant Oshkosh Corporation's products, but also the form and content of any labeling, product literature, or warnings supplied with the products, which were developed based on Department of Defense guidance. *Id*. at ¶ 14. The Army reviewed and approved all product literature, such as Operator and Maintenance Technical Manuals that accompanied the HEMTT vehicle, which included the instructional tasks, warnings and prescribed use of personal protective equipment. *Id*. at ¶ 15. Moreover, Army facilities that housed and/or used equipment

and vehicles manufactured by Defendant Oshkosh Corporation developed their own set of standard operating procedures based on approved Army Technical Manuals for HEMTT vehicles that outlined specific workshop practices and techniques for servicing equipment and vehicles. *Id*. at ¶ 16.  Thus, Defendant Oshkosh Corporation has a colorable claim that it is entitled to immunity from state tort law in this action under the government-contractor defense.

14.     Similarly, in the failure to warn context, Defendant Oshkosh Corporation has demonstrated that the Army exercised its discretion and approved specifications for the HEMTT and its component parts.  *Graves v. 3M Co*. 17 F.4th at 772; *see also*, Exhibit 6 at ¶¶ 5-13. Defendant Oshkosh Corporation provided the approved warnings required by the Army, and Defendant warned the Army about any hazards known to it in CDRLs delivered to the Army. Exhibit 6 at ¶¶ 6-15,

15.     As required by 28 U.S.C. § 1446(a) and Local Rule 2.03, true and correct copies of all process, pleadings, orders, and other papers from the matter filed in the Twenty-Second Judicial Circuit Court of St. Louis, Missouri, are being filed with this Notice of Removal.  A copy of the complete file from state court, including a complete copy of the current state court docket sheet, is attached hereto as Exhibit 7 and incorporated by reference herein.

16.     Pursuant to Local Rule 2.02, a completed Original Filing Form and Civil Cover Sheet are also included as exhibits.  The Original Filing Form is attached hereto as Exhibit 8 and the Civil Cover Sheet is attached hereto as Exhibit 9 and incorporated by reference herein.

17.     All pending motions and responses to the same, including a cover sheet indicating which motions are currently pending, is attached hereto as Exhibit 10 and incorporated by reference herein.

18. Pursuant to 28 U.S.C. § 1446(d), Oshkosh Corporation is filing written notice of its Notice of Removal with the Twenty-Second Judicial Circuit Court of St. Louis, Missouri, and is serving it on all counsel of record.

WHEREFORE, Defendant Oshkosh Corporation requests that this Court assume jurisdiction over the matter.

Respectfully submitted,
**GOLDBERG SEGALLA LLP**

By:/s/ Sarah B. Mangelsdorf
Sarah B. Mangelsdorf #59918MO
smangelsdorf@goldbergsegalla.com
8000 Maryland Avenue, Suite 640
St. Louis, MO 63105-3752
314-446-3350
314-446-3360 (Facsimile)

Attorneys for Defendant Oshkosh Corporation

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing has been electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record on the 14th day of September, 2022.

/s/ Sarah B. Mangelsdorf